Today's case is number 24-1721 United States v. Charlie D. Vick. At this time, would counsel for the appellant United States please come to the podium and introduce himself on the record. Good morning. Donald Lockhart for the government and may it please the court. May I reserve two minutes for rebuttal? You may. Thank you. The district court suppression ruling should be reversed for three separate reasons. First, as the district court and the defense have acknowledged, this court's decisions in Hawkins and Boudreaux essentially foreclose any inquiry into pretext so long as the officers complied with standardized criteria for impoundment and inventory searches. Counsel, let me ask you, I've watched the video which is part of the record and in the trunk and they go straight to the jacket and pull out the gun. Does that change your analysis or no? No, not at all, your honor. The district court cited that as one of seven circumstances that it felt indicated that the officers here acted solely with an investigative purpose. All of those circumstances show is that they acted perhaps with a strong investigative purpose, not with a sole investigative purpose. We read sole to mean 100%. It's not so clear from the district court's ruling that it had that same definition of sole in mind when it was looking on these facts. At one point, at page 99 of the addendum, you'll see the district court say, I don't think that they came back from the barracks to the parking lot simply because they had these traffic-related concerns in mind. So if we are using that definition 100% for sole, we think that when officers like these officers have three very compelling non-investigatory reasons for doing what they're doing and those reasons are actually in their heads, they're clearly in their heads when they're coming back from the barracks to the parking lot, then just logically there doesn't seem to be much room for a finding that their sole motive ... Can I just back you up a second? You began by saying that we don't even get to the pretext inquiry until there's some deviation from the rules insofar as there are rules and here there were rules. Correct. That's our first point. And so just on that point, I thought the district court found that one of the requirements was an inquiry about whether there was alternatives for handling the car, that that was breached. What's your view on that? Right. So the district court actually found five material, what it felt were material, at least collectively, variances from state policy. Three of those alleged material variances have already been addressed and rejected by the Sylvester and Trullo decisions. One, the one that you just mentioned, is actually covered by Sylvester. That is, yes, I think you were referring to either the tow preference option or maybe the third party disposal option. And both of those criteria from, I think it's turf nine in this case, were dismissed in Sylvester. Noncompliance with them was held to be not, did not affect the analysis of whether ... But that's a different question. There's a question of whether it was objectively reasonable and the mere deviation from a rule doesn't render it objectionably unreasonable. That's what I think Sylvester makes clear. But there's a different question, which is when we're not focused on whether it's objectively reasonable, but we're now focused on pretext, I think there's force to your point that you can't even do the pretext inquiry if they were on all fours with the procedures. But when they're not on all fours with the procedures, you can then do pretext, even if the deviation is not such that it would render it objectively unreasonable. Isn't that the right way to do the analysis? Right. And actually, Sylvester addresses the very point you're making because after saying what I've just said it says, it goes on to say that to be sure the defendant in this case also raises a pretext argument based on the alleged deviation from this particular facet of the TOEP policy. But notably, no one asked the officers at the suppression hearing why they didn't ask. But that was a failure. But we have a finding by the district court here as to pretext. We did not have that in Sylvester because there was no request to make a finding that would support the pretext. We have the actual finding of pretext here, don't we? Well, keep in mind, Your Honor, this is one of the several points that the district court made sui sponte in its ruling. And I understand that it's entitled to make those- We have a judgment and now you have to- Yes. But if your argument is that it's unsupported factually, there's no foundation for it, then we have to get into the question, do we review that for de novo? Do we review it for clear error? Which I don't think we've passed on one way or the other as to what the standard of review for this pretext finding itself is. I take it you don't think it's clear error. No. Even though you think everything else is clear error. Right. So I guess to answer your question about pretext in this context, it would be one thing if the district court actually had something in the record concerning why the officers did not ask the question of Mr. Warner about either toe preference or third party disposal, and then made a finding from that that she didn't believe some aspect of what they were saying. It's quite a different thing, though, to- I think the logic of it is when you're not following the procedures, the concern goes up marginally or more, depending on how much they're deviating from it, that they're actually focused on the inventory aspect of it rather than the investigatory purpose. So even though it's not dispositive, it's a quantum of evidence in the circumstantial case for pretext, along with all the other things she cites like waiting for them to go forward, even though that seems inconsistent with the safety concerns, etc. She makes her case for why it's pretext. On the simple point that can we even look at pretext, I don't think I'm hearing you disagree that we can if there was a deviation from the procedures. Or are you saying that even when there is a deviation from the procedures, we still can't look at pretext? Which of the two are you saying? No, we're saying consistent with Hawkins and Boudreaux that if there is a material deviation from state policy, material... And what does material mean? Enough to make it objectively unreasonable? Correct. I don't believe we've ever said that. I don't think, I don't see that in our cases. I thought that was a separate question where the inventory search fails because it was objectively unreasonable and we're not making any finding as to whether it was for a solely investigative purpose. That's just a different ground for rejecting the search. So to the extent that failure to comply even immaterially with a state policy somehow opens up the question... I guess the question is material to what? Material to the objective unreasonableness inquiry or material to the pretext inquiry? And I think you could say here the deviation may not be enough to show it was objectively unreasonable, but arguably is enough to open an inquiry into whether it was pretextual. Well, so let me just take on the sort of factual point because the third-party disposed option simply wasn't available here. Okay, so that putting aside Sylvester... And that's because no one could... Because no one could drive this car... Even towing it? No, no, no one, no proper... So the district court's criticism of the officers on this point was that they didn't offer Warner the opportunity for a third-party, properly licensed third-party to drive away the car. Our answer to that is it couldn't have happened. That can't be a tow truck operator? Because they weren't talking about towing, they were just talking about driving? Okay, well we consider that to be an actually a distinct question which goes to the tow preference piece of this. And so then the question is, let's just assume that the officers complied with state policy here because there was no properly licensed third-party who could have driven the car from the scene, and that the question is whether, well, should they have nonetheless asked Warner about his preference for towing? And they didn't. Again, no one asked the officers why they didn't put that question to Warner, and our position would be the simple failure of the officers not to put that question to Warner does not suffice to show that they operated protecturally because the Supreme Court... Terrific, I get the argument. And on that point, if that's the inquiry we're supposed to do, is there a factual basis for the finding of pretext? Is that a clear error review or de novo? Okay, so to the extent that we are sort of in a situation where you've concluded that they're consistent with Hawkins and Boudreau, that there's been a material variance from state policy such that subjective intent is now open, and to the extent you also reject our Arkansas v. Sullivan argument, because remember, that's a separate legal ground that we have as to why pretext is wholly irrelevant in the traffic stop context, even when officers fully expect and intend to inventory search. Let's just say you reject our Arkansas v. Sullivan argument, also assume that consistent with Hawkins and Boudreau, we're in a situation now where subjective intent is opened up. To the extent there is clear error review as to what you might call just the differential fact finding concerning whether there was a sole motive here, our position is still that there would be clear error here. Okay, and you think the right standard review for that is clear error, not de novo? If you wipe away all of our other legal arguments and we're left sort of just naked with sole motive as the operative standard, our position then is that a sole motive inquiry really only makes sense in a couple different, or a sole motive finding really only makes sense in a few different hypothetical situations, none of which exist here. The first is what you might call the Del Rosario scenario, where the officers have no non-investigatory reasons such that the inescapable inference is that they acted with a sole motive to investigate. A second hypothetical situation where a sole motive exception might make sense is where the officers have those reasons, but they're unaware of them at the time they act, okay? And a third possible hypothetical is where the officers just flat out admit on the stand at the suppression hearing, yes, we acted with 100% investigatory motive. We didn't give a fig about any of these traffic-related concerns. We take sole to mean what the word seems to imply, and that is 100%. And I guess the only thing there, what is clearly erroneous about concluding in a forced scenario where you obviously didn't care about the traffic concerns because you let them drive it, and onto the part where you couldn't, and you let that happen only after foregoing the option of informing them of the ways in which they could have had the car removed without it being driven, which I take to be the thrust of her conclusion. Then, to Judge Helping's point, everything they did after that just shows, reinforces that their real purpose here was investigative work. So we have to, I think, carefully distinguish between sole motive to impound versus sole motive to investigate, all right? It may be the case that when the officers see the car rolling off the lot and onto the public street, their sole reason for allowing that to happen is that they want to impound the car. Why would they want to impound it? Because this is a car that, number one, may contain a gun. Number two, it's unlicensed. They're unregistered. It's uninsured. It has false plates attached to it. And so if you look at it from the standpoint of just overall reasonableness, Fourth Amendment reasonableness, you have to think, what were the officer's other options that they had? You have to compare it to something. And so let's talk about the options. They could have let Warner go back to Rhode Island. I think everyone would have agreed that that's not an acceptable option, even my brother. Second option is they could have either interceded before he got in the car or they could have stopped him shortly after the car started moving along the parking lot. In those two scenarios, however, we're then left with a car that's abandoned, essentially, in a parking lot of a kitchen and bath store, potentially with a gun in it, unlicensed, uninsured, in a situation with false plates and in a situation where Warner or somebody else could come back later that night, the next day, with keys to that car if they had access and try to drive that car away. So what are we supposed to do? Have the officers post a guard in the kitchen and bath store? So confronted with these various options, it's not unreasonable for the officers to allow this car to roll onto a public street where they can quickly stop it, impound it, deal with it. Now that you're saying that, let me ask you, the difference if the car's in the parking lot and he's not even in the car is it's not a traffic stop. So the officers are looking for this to become a traffic stop where they're more flexible. I assume that's what happened. Well, I think what the officers said at the suppression hearing is that they could have stopped the car when Warner was driving it on the lot. They didn't say why, but presumably it would have been probably driving without a license. I think they probably could have interceded before he got in the car and just said, hey, we know you're unlicensed. The car is unregistered, uninsured. They could have quoted from the parking lot and taken it there also. From the parking lot. Yes. Or they could obtain a warrant to take the car. No, we didn't have probable cause for a warrant to search the car. Counsel, can I just, I'm trying to understand something about the record because it seems like there's a series of different decisions the officers make and they're slightly different standards that apply to the inventory search versus the decision to impound versus the traffic stop. And so if we're focusing on the decision to impound, I just want to make sure I understand something that you're saying. You're saying that there was no way that the car could be driven by anyone given that there was no insurance it had in battle plates, etc. But it seemed to me that the record indicated that the officers thought they could not actually impound the car when it was in the parking lot. And so, but now you're saying they had no other options really to what they did. Can you just explain that discrepancy to me? Yeah. So everyone is clear on the point that the officers believe subjectively that they could not impound the car from a tow lot. As we point out in the footnote to the reply brief, it's not totally clear whether that is true, but it's a fact and it's a fact we have to contend with. And the fact that they believe that. The fact that they believe that. Yeah. You can take it to the bank. And nobody contests that. That's an undisputed fact. Correct. That is that they believe that they could not tow the car from the lot. But our point is that if you are looking at this from a Fourth Amendment reasonableness perspective. Which is what governs the decision to impound. Correct. It's a reasonableness decision. And we know from the cases cited in our brief that reasonableness is a mixed question of fact and law that's reviewed de novo. So if you're looking at sort of from that perspective as opposed to just the discrete sort of sole motive factual inquiry, then we're on de novo review. And then we're considering not just what the officers did, but what the other options available to them were. And I've sort of cycled through them. I guess my question though is focusing on reasonableness. Given that there were other options, why was it reasonable to choose an option where you're allowing somebody who doesn't have a license in a car that's uninsured to drive onto a road? Why was that a reasonable decision? Right. So a couple things on that. First of all, I think the district court's sort of main concern with what happened at that juncture was the presence of a 10-year-old boy in the car. But I think you just said we're doing de novo review for reasonableness. I'm just looking at all the circumstances. Oh yes. And I'm trying to include all of those historical facts in it. And I think one of the most important ones, if the district court were here, which she would say, was the presence of that boy in the car. And we have to contend with that fact in showing reasonableness. And so I'm acknowledging that. And I want to make a limited point about the boy, which is that there's nothing in the suppression hearing record suggesting, and the district court didn't suggest in its ruling, that the officers knew that Warner would be coming with this boy to the scene. What the record reflects is that the white SUV with the uncle Warner arrives. And then eventually Warner and his son get out of it and enter the Nissan and then they go across the parking lot. So the officers have, the point is that they have a very limited amount of time. But he is there. And so it's a circumstance we have to consider. So I think my question for you is, given that the reasonableness analysis is done in light of all the circumstances, I'm just a little concerned that what makes the decision to allow the car to go onto the road with an unlicensed driver, with a child, with a car that has no insurance if there's an accident, really what makes that reasonable is their investigatory goal. What else would you say makes that a reasonable choice given the options? So I think this is an important distinction. I think we tend to think of the presence of the gun in the car as sort of just in terms of the investigatory interest that that might entail. But these are community caretakers and the presence of that gun is relevant to their community caretaking function as well, right? So they think that they can't tow the car from the lot, right? They think that if they don't let it go onto the they're not going to be able to impound it. Then it's going to be sitting in a parking lot in a situation where somebody could come back later that day or the next day with keys to that car, get in it, and drive off potentially not just with a car that's unregistered, unlicensed, uninsured, false plates, whatnot, but potentially with a gun in it. And so the gun is sort of a two-edged sword, really. I just want to clarify one thing to make sure I'm not missing something. The suppression was not based on a determination that the impoundment was unreasonable. The suppression is based on a determination that the inventory search was predicated on a sole investigatory motive. Is that right? Or are you saying that either ground independently could be a basis for the suppression? So I think a fair reading of the district court's ruling is that it was really mainly about sole motive. And on appeal, are you, is a defense to the suppression motion being presented as there's an independent ground for suppression, which is that on a de novo basis the impoundment was unreasonable? Well, do you think that's part of this case? I think it's part of the case that I know how, I think I know where you're going, which is it's part of the case insofar it's relevant to the determination of the motive. I'm not asking that. Right. Forget its relevance to the motive. Imagine the only issue in the case, suppose whatever reason they chose not to go up on the motive thing, they just said the impoundment was unreasonable. Therefore, everything that follows from it is tainted. Is that part of this case or not? I think it is in the following respect. As Judge Rickman was pointing out, this court has said several times that the evaluation of the community care taking functions of the police is all about reasonableness. So we, although sole motive is sort of a part of that analysis in the sense that we require officers to have non-investigatory reasons for doing what they're doing and to have them in their head when they act, we're also looking to some extent at least at the reasonableness of their conduct. It matters to me. It may be the case that the impoundment was unreasonable from an objective de novo point of view. But as you point out, this record shows that for whatever reason, these officers thought they had no option to impound unless the car was driven. That's your take, right? Yeah. And I take it you're saying that fact bears on the assessment of their subjective intent at the time of the inventory search. Oh, without question. Okay. Even if you were right on that, and that might undermine the finding by the district court that their sole motive was investigatory when they did the inventory search, there's nonetheless the question of is that inventory search the product of an unreasonable impoundment? All right. And I'm asking is that at issue in this appeal such that we could affirm the district court on the ground that the impoundment was unreasonable? No, because my brother is not either in the district court or on appeal. So insofar as the reasonableness impoundment comes into play, it comes into play insofar as it bears on the inquiry into the motive doing the inventory search, right? I would agree with that. Okay. And then I take it your position is since the record shows the officers thought they could not impound. Correct. It's kind of beside the point from your point of view, whether the impoundment was in fact unreasonable. Yes. That's the take of your argument? Yes. And I think my reasonableness argument is also meant to address just a question I thought might be lurking in the heads of the judges. Let me ask one last question. My experience, and I could be wrong, but was that inventory searches of the cars was driven off or intervened, the inventory search will take place at the police station. And it takes place right here when they get Mr. Vick out of the car. And it's right there and they just open it and go for the weapon, the jack and the weapon. Isn't that something that doesn't particularly, like it's not necessarily the normal procedure? They've done it at the police station when they inventory everything and fill out the forms? Or is there a practice of doing inventories out in the highway or in the streets? No. With respect, it's actually the opposite. The standard procedure is to do it in the field before the tow truck arrives precisely because... But here there was no tow truck. There was. Oh, no. They called the tow truck. The record reflects tow truck arrived. Before the tow truck arrived, they conducted a detailed inventory of the contents of the car. And the Supreme Court and this court have pointed out the whole reason, several reasons for doing that are, you know, number one, to ensure there's nothing dangerous. They could, you know, either... They go directly, open the trunk. You can see the video. They open the trunk. There's the pull out the gun. They know exactly what they're looking for. Sure. And again, this is one of the seven, you know, circumstances the district court cited in support of her sole motive finding. But again, all that shows is they had a strong investigatory motive and or a strong community caretaking motive to get, to find that gun, isolate it and make sure, you know, it was not going to either themselves or the tow truck driver or anyone else in the chain. The whole point of the inventory search is that it's supposed to take place before the tow truck arrives precisely to prevent that sort of danger issue. Also to prevent against claims that the tow truck people or the and in fact, I just can't see how they would do it otherwise to do this out in the field. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellee please introduce himself on the record to begin? Good morning. Richard Farrell from Mr. Fick. May it please the court. I think the district court said it best here that this case presents a unique constellation of factors. And I know there's been some discussion about the inventory report and the procedure of the inventory. So I wanted to point out there's a few areas where there were material deviations from the inventory policy in this case. The first is that Mr. Warner was never asked for his preference of tow company. That is a shall, that is phrased as a shall in the inventory policy, not a may. And because of that, I think Sylvester is not directly applicable to this because Sylvester talks about a third party call or something like that. This is a tow company. It's a policy, it's a shall in the policy. And Mr. Warner has a cell phone. He has the, they give him a phone by the side of the road and he has the ability to call. One of the other areas of material deviation, and I think the district court highlights this, is the fact that there's no, nothing in the report, nothing in this inventory, reflecting the condition of the car. And I know Judge Shelby sort of referenced this, that the body cam video is in the record. And if you look at the body cam, you can see that the back bumper of the car is broken and damaged. And that is not anywhere in the inventory report. And that certainly supports any finding of pretext in this case. I agree that there are some items listed and I agree with the district court's interpretation that that listing does not follow the requirement of opening closed containers and inventorying each thing individually. And some of the things that they identify are sort of generic. Computer speakers is not specific as to the type or brand or number. I would also say that letting the car pull out of that parking lot is a deviation from the policy statements right in the policy that the judge references. I don't think there's any colorable attempt to comply with the part of the policy here that prevents accusations against the police against damages, damage to the car or vandalism or theft from the car. All this is is a statement in a police report that these are items that we took out of the car. So I think that presents this unique constellation of factors that the district court references. There are all these deviations from the inventory and that gets us to the pretext. But what about the interest in impoundment? So I think that the cases cited by the government and the way this presents are very different than, well the facts in this case are very different than the cases presented by the government because this is an impoundment that's set up by the actions of the police. It's an impoundment that's set up, and as the court noted just a few minutes ago, it's set up in part because the police aren't sure that they can search this car if they impound it in the parking lot. So they want to set up a circumstance where they can get it onto the road. But the police or law enforcement can set up circumstances. We see it every day when there's sting operations, when they go into homes, every type of scenario. Aren't they entitled to choose between one or the other? Who's to tell them, you've got to do this one or do that one or do that one? I think the law is clear here that they are entitled to choose from a variety of options, but all those options have to be reasonable. And if they choose an unreasonable option, they then open themselves up to the sole motive analysis. Let me ask you, let's assume they, under your theory, they should have done it at the parking or whatever. Aren't they still acting in good faith thinking that they can't do it there, or is it something that it's so obvious they could have done it, then it's not good faith? Well, I would suggest that it's not a reasonable alternative. Because this is a community care scenario. The justification for the inventory search is for community care taking, which means that it has to be for a non-investigative purpose. But once they impound the car, it's hard to see why they don't have a non-investigatory purpose to do an inventory search of an impounded car. Right? Yes. Okay. So you then say, well, you can't rely on that as the thing that undermines the sole investigatory motive finding because the impoundment itself was unreasonable. So that doesn't show that they actually had a true interest in doing inventory search and furtherance of the impoundment because they didn't have any interest in the impoundment at all since they chose an unreasonable means of impounding it. That seems to be your logic, right? That is my logic. Okay. But what do we do about the fact, in the record not disputed, that the officers thought the only way to impound the car was let it be driven? Well, the officers stated during their testimony that they could have stopped it in the parking lot. They were well aware of that. They had the opportunity. Stopped it and impounded it? Well, I think they can impound the car. Whether they can do an inventory search. I'm asking whether they thought they could impound it so long it was in the parking lot. I thought the fact, at least as represented by the government, that there's no dispute that the officers thought it had to get off the parking lot to be impounded. Is that wrong? I don't think that that's, I don't think that they testified to that at the hearing. I think they testified that. Let's assume, just since you're up here, that they did so testify. What then do we make of that for purposes of assessing the sole investigatory motive? In other words, the officers subjectively thought, unless this car gets off the parking lot, we can't impound it. We have an interest in impounding it because we don't want to leave a car like this just there because of all the risks that entail. We're not going to guard it forever. So we'd rather impound it. So, rather than stopping him from driving it, we'll watch at which point it gets off the lot, then we can stop it and impound it. If all of that's what they thought, that does seem to suggest that at that point, their reason for doing inventory search would be in furtherance of the ordinary course that you do when you impound. And yes, they didn't follow all the rules, but that wouldn't necessarily show they had a sole investigatory motive. That's, I think, the thrust of the government's argument. So what's your response to that? I do believe that's a thrust of the government argument. That ignores two things. I think the first thing it ignores or doesn't take into account is the fact that the police came back and sat in that parking lot for an hour and a half, at least, waiting for Warner to arrive. And the second part of that is, assuming that the court's hypothetical is accurate and that the police thought they couldn't impound and inventory the car in the parking lot, that just proves too much. It proves that the police's only motivation is to get in that car and see what's in there. Council, I think you do say in your brief, and I'm looking at page 12 in your brief, that the troopers knew, this is the bottom of page 12, they knew that MSPTO policy would not permit impoundment from the kitchen and bath parking lot. They could have stopped the car while it was being driven in the parking lot, according to your brief, but they thought they couldn't impound it. And so I think the question I have, which I ask your opposing councils, so what should have the police done here? What were their options? They had a car that they now knew for the past hour and a half could not be driven. The car itself just couldn't be driven by anyone. So why was what they did here unreasonable, given that they knew there was just no safe way for that car to be transported? Well, if we return right back to that MSPTO policy, one of the things that that says is that the troopers shall give the person who's having their car towed an option to have that car towed by a person of their choice. Had the trooper who was 20 yards away, I think is what the record reflects, walked up to Mr. Warner and said, you're not driving that car out of here, you can have that car towed, you can have a dealer come pick it up, you can do whatever you want with it, but you can't drive it on a public road, that's a perfectly reasonable, safe, logical, and effective way to deal with this unregistered, uninsured car. But that policy, I thought that policy kicks in post-impoundment, not pre-impoundment. No, I agree with the court. That's just Judge Helpey's question. At the time before they've impounded it, what are their options? One option surely would be to say, can you get rid of this car, do you have a tow company, why don't you call them and get rid of it and then you're good to go. That would have been perfectly fine for them to say. Just like if they see somebody's about to sell drugs to somebody else, they could say, you know, I suggest you not do that, not a good idea, why don't you go do something more productive. But they also can sit and watch them do the drug deal and then arrest them. So why, I think to Judge Helpey's question, why couldn't they just say, well, we could do that, but I'd rather not have him do that, if he's going to get in the car and drive it off, we'll just impound it at that point, because that's illegal. What's wrong with doing that? I think the distinction here goes back to the pretext finding that the district court made. The fact that they waited for this car to get onto the road in order to do this impoundment and then inventory is a mere pretext to do the inventory. It's not a question of whether it could be led onto the road to break the law here in order to entrap Mr. Warner into some sort of, not a trap, but in order to arrest Mr. Warner for some violation. This was an attempt to get around the fact that they didn't have probable cause, which I think they stated, I think the troopers stated this at the hearing, that they did not believe they had probable cause to search that car in the parking lot. So they need to generate a way to get this under the community caretaking world. But now it sounds like you're challenging the impoundment as pretextual. I'm challenging the impoundment as unreasonable. I think... Yeah, but that, I think the government's contention is that may be irrelevant if nonetheless they thought that's what they had to do to impound because that bears them on what their motive was when they did the inventory search post-impoundment. I think I disagree with that premise. Okay. Their motives are laid very clear underneath all of this. What are the actions they took, the fact that they went back there, the fact that this highly trained fugitive unit went back to watch this car to wait for it to get on the road. And I don't think you can divorce the motives for letting the car leave from the motive for the search. So, I understand the argument that the government makes about the impoundment being separate, but it isn't in this case because it's an action taken by the troopers that needs to be reasonable in order for the community caretaking to kick in, so to speak. So, if the actions taken by the troopers in that parking lot are analysis. Counsel, I did understand your brief to challenge both the decision to impound separately, in and of itself, independently, separately, in addition to the relationship to the inventory search. I read your brief that way, but just to go back to my question, the police did go back and sit for an hour and a half, as you said, but they did have, they had a problem. They had a car that they now knew could not be driven by anyone. And so, even just focusing on the impoundment decision itself, again, what else were they supposed to do? What made the decision to allow the car to drive off unreasonable, given their belief that they couldn't impound in the parking lot? And the fact that they did need to do something with this car that could not be safely driven by anyone that they thought might have a gun in it. So, I'm just trying to understand from you, assuming they can't impound and the towing only happens after you impound in the parking lot, what were their other options? What made their decision to allow the car to drive a short distance unreasonable? If their reason for doing this is that we think there might be a gun in that car and we don't have reasonable suspicion, probable cause, or any way to get in that car, then that shows that their sole motive for setting up this impoundment in the first place is so that they can then do an inventory search. The alternative that the court poses is what else could they have done? They absolutely could have stopped that car and Mr. Warner at any point in that parking lot. They got the knowledge ahead of time. They had plenty of room in the parking lot to stop the car. Both the troopers said that. But then do what with the car itself? They could have been towed by Mr. Warner. Or he could have gotten a proper registration for it and someone licensed to drive it. He got a ride there from a licensed driver. There's no reason to believe that that situation that it had in the parking lot could not be remedied. And I think the record... Are you challenging the impoundment on appeal? I'm sorry? Are you challenging the impoundment on appeal? I think I'm challenging the impoundment to the degree that it's an unreasonable method to trigger the community caretaking exception. I don't think I understand that. Let's say this. Suppose we think there was not a sole investigatory motive for the inventory search. So the inventory search is totally fine. Even if the impoundment was unreasonable, do you still win the case because you're saying the impoundment was unreasonable and therefore everything that followed was tainted? Yes, I think that's... Is that what the district court determined? I think the district court... That kind of is a... Did the district court determine that? I believe the district court did determine that at least in part because of the phrasing of the unique constellation of factors and the emphasis that the district court put on... Okay, so if you are challenging that and let's say that the district court also did it so we could affirm on that basis, if that's in the case, is it your position that regardless of the belief of the officers as to whether they could impound, they in fact had no legal ability to impound that car when it was in the parking lot? Would it have been illegal to impound it while it was in the parking lot? I have not made that argument. I don't think that... How could we... In the absence of that, how could we say de novo it was unreasonable to do what they did without knowing that one way or the other? I don't know if I'm understanding your question, your honor. I don't think that... Well, if they had no authority to impound while it was in the parking lot, then we can't very well say... That bears on whether it was reasonable for them to let him drive it so they could impound it insofar as they had an interest in impounding rather than having him drive it away. I don't think that that testimony came in exactly that way at the hearing. I think that what happened at that hearing was a discussion about whether they could inventory the car, whether they could do a search of the car. Let's assume that they had the belief they couldn't impound. I'm just asking, legally could they impound it on the parking lot? We don't know one way or the other. I don't think there was any evidence in the record on that point. No finding by the district court one way or the other on that point? I don't believe so. All we have is the subjective belief of the officers is that they didn't think they could impound it in the parking lot. At most. I think that's what we have, but the question then becomes whether that subjective belief is enough. Just before you sit down, can you just address that Arkansas argument that the government's making? I think that the problem with the Arkansas line of cases, and it's a long line of cases, is every one of those cases has a disclaimer in it somewhere that the impoundment and inventory search cannot be done for purely investigatory purposes. And I will grant this court that that one, two, three lines. But in every one of those cases, whether it's Wren or Arkansas, all of that line of cases, that line exists in those cases. And this is taken out of the heartland of those cases by the simple fact that the police did not find this car when it was operating or did not come upon it, but they manufactured this situation by going back 16 miles from the Millbury Barracks and sitting there for an hour and a half. And I think that takes us out of the Arkansas cases and into the Del Rosario pretext inquiry. Thank you. Let me just clarify something. You mentioned a couple minutes ago something about there being no reasonable suspicion or probable cause. The district court never did a reasonable suspicion analysis to intervene with the vehicle, correct? That's not part of the analysis, correct? It's not. It was something that was... It was never argued by the government? It was not. There was testimony at the hearing that I think was in the record. That's the only reason I addressed that. Okay. Thank you. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the government please reintroduce himself on the record? He has a two-minute rebuttal. Yes. Donald Lockhart for the government again. I'd like to make just three limited or four limited points. The first is that, as Judge Rickleman pointed out, the defense in its own briefing at page 12 says that testimony was elicited at the suppression hearing to the effect that the officers could not impound the car from the lot. If you look at joint appendix page 67, you'll see my brother elicited from the trooper. He was cross-examining that very point. We thought it was undisputed. I haven't had a chance to look back at the court's ruling to see whether the district court accepted that premise, but I thought she had. I thought everyone was on the same page with the fact that they could not tow the car from the lot. I thought, in fact, that the defense was really trying to leverage that fact for its own benefit. Second, I'd like to address the idea that the officers created or manufactured the situation. Keep in mind it was Vic who came up with the idea of calling the uncle to get the car. The uncle came up on his own steam, got the car. The officers didn't have any role in either of those decisions, so it makes no sense to say they created or manufactured the circumstances that arose there. Third point, on the inventory form, the fact that they didn't note the condition of the car, we think the Truelow case of this court takes care of that concern, both in terms of the Hawkins-Boutreau, was this a material deviation, and in terms of was this something that should make us think that they acted with a sole motive. And then the fourth point is really the Arkansas v. Sullivan point, which we read that decision as saying even in a situation where officers are conducting a traffic stop and arrest solely because they want to conduct a later inventory search, that under the REM logic, that's fine. That's our reading of the case. We acknowledge that a lot of circuit court decisions haven't really looked carefully at Arkansas v. Sullivan. Before you sit down, can you clarify your understanding of where you think we are with respect to whether there is a challenge to the reasonableness of the impoundment as a stand-alone ground for affirming the suppression? Yeah, so I don't see that. You don't see it in the sense that you don't see it on the merits, or you don't? No, no, don't see it in the briefing. The word reasonableness, to be sure, is used in the defense briefing, but I don't understand either in the district court or on appeal there to be a defense sort of fully formed, developed argument that under Fourth Amendment reasonableness principles, what the officers did in terms of having to make this decision to let the car go off the lot or deal with the other options that they had was unreasonable. And to that point, was there anything put into the record about whether it could have been impounded in the lot, notwithstanding the testimony of the officers' belief that they could not impound it in the lot? Did the district court have before it any basis for concluding that it would have been lawful to impound it in the lot? No. No. Thank you. Thank you. Thank you, counsel. That concludes argument in this case. Counsel is excused.